**DUNAWAY, Plaintiff-Appellee, v. TORLINE et,
Defendants-Appellants.**

Ohio  Appeals,  First  District,  Hamilton  County.

No. 7462.   Decided October 29, 1951.

Cedric Vogel, Cincinnati, for plaintiff-appellee.

Charles S. Furber, Jr., Joseph Lemkuhl, Cincinnati, for defendants-appellants.

## OPINION

By MATTHEWS, J.:

This action to recover under the Price Control Act, (Sec. 205 of United States Public Laws, passed by Eightieth Congress) because of an alleged rental charge in excess of the maximum fixed under Section 204 of that Act, was begun by George Dunaway and Dolores Dunaway. There have been two trials, resulting in each instance in a verdict against the defendants.

At the first trial, it developed that George Dunaway was a minor at the time the action was filed and at the time of trial. Inasmuch as George Dunaway had not acted through a next friend or guardian ad litem, the Court was of the opinion that the action had not been properly filed as to him. However, he allowed the trial to proceed as to Dolores Dunaway. On the motion to set aside the verdict and for a new trial, the Court concluded that inasmuch as George Dunaway, the minor plaintiff, had verified the petition, and the action had been improperly filed as to him, it was necessary for him to set aside the verdict and he did so on that ground, and also

on the ground that the verdict was manifestly against the weight of the evidence. An order was made dismissing the action as to George Dunaway and allowing it to remain pending with Dolores Dunaway as the sole plaintiff.

In the petition filed by Dolores Dunaway and George Dunaway, they alleged that they had rented the premises from the defendants. After the dismissal of the action as to George Dunaway, Dolores Dunaway filed an amended petition in which she alleged that she had rented the premises.

The appellants contend that the court erred in not dismissing the action as to Dolores Dunaway, as well as to George Dunaway, when it was discovered that he was a minor. We do not stop to consider whether the court would have erred in dismissing the action as to George Dunaway, if he had objected to such action. The fact is that he did not object, and is not now objecting. The case, therefore, stands as though two persons conceiving that they have a joint action, and, upon discovering that one has no right, that one voluntarily withdraws, leaving the action to proceed on behalf of the sole owner of the chose in action. There is no error in this, but the remaining plaintiff would be obliged, of course, to prove sole ownership. We have examined the evidence on this point and find that Katherine Torline testified that all the negotiations for the rental of the premises were conducted between her and Dolores Dunaway, and that the rental was to Dolores Dunaway. The defendants made no effort whatsoever to qualify this. We, therefore, find that George Dunaway was not a necessary party to this action.

There is no evidence that Dolores Dunaway did not authorize the filing of the original petition in this case. It was signed by a duly licensed attorney-at-law, as her attorney. The presumption is that he was duly authorized by her. Summons was duly issued on it. That constituted the commencement of the action. The fact that the verification was defective did not destroy its character as a petition. If no verification had been attached, it would still have been a petition. Such defects may be cured by amendments.

The action having been commenced on the 5th day of August, 1948, and the last alleged excess payment of rent having been made on the 16th day of June, 1948, the action was commenced well within the statutory period after such last payment. No matter how the statute is construed, the amount of the recovery in the case is well within the breaches that occurred within the period of limitation.

We, therefore, conclude that whatever claim the plaintiff has is not barred by the statute of limitations.

The defendants acquired the title to this building, of which the room or apartment rented by plaintiff was a part, in 1945. This apartment or a part of it, known as "Apartment 2" had been leased by the prior owner for $7.50 per week. It, however, was unoccupied at the time of defendants' purchase of the premises. It is undisputed that the defendants enlarged it to double its former size, put in a new General Electric Refrigerator, new linoleum, bed-room and living-room furniture, painted the apartment, put in a new sink, with hot and cold running water. The defendants notified the Office of Price Administration and were told to establish their own rent, and then bring down evidence of their expense of remodeling, and they would be told what amount to register it for.

During the making of these improvements, the plaintiff occupied another apartment in the same building and knew at least something of the improvements as they progressed and when defendant Katherine Torline returned from notifying the Office of Price Administration she had a conversation with the plaintiff, resulting in the plaintiff offering to pay $15.00 per week, which the defendants accepted. The plaintiff moved in and paid $15.00 per week for almost two years, when a disagreement arose about something other than the amount of the rent and the plaintiff vacated the premises. About two months thereafter, this action was filed to recover treble the difference between $7.50 and $15.00 per week for the entire period of plaintiff's occupancy and attorney's fees under the United States Rent Control Act.

After this action was filed, the defendants filed a registration of this apartment at $15.00 per week. The rent inspector inspected the apartment and approved the rental. So whatever action that was taken by the Office of Price Administration was in approval of this rental charge. However, the Rent Expediter took no affirmative action. It was at the suggestion of the inspector that the apartment was treated as a new unit and given a new designation (2-A) upon the records of the Rent Area Office.

The jury found for the plaintiff for the amount of the actual difference and awarded no penalty or attorney's fees. Judgment was rendered on the verdict.

It is from that judgment that this appeal was taken.

Various errors in the general charge and in the giving of two special charges are assigned. An examination of these special charges and the general charge discloses that they contain correct statements of the law to guide the jury in deliberating upon a case where the issue is whether the de-

fendants had charged in excess of a maximum rent fixed by the Housing Expeditor. The difficulty with the charge is that if the record presents that kind of a case there was no issue of fact to submit to the jury excepting whether treble damages and attorney's fees should be awarded, for the reason that if the rent charged for one-half of this apartment was to govern the maximum rent, the amount collected by defendants of $15.00 per week was just twice the permissible rent. The amount of the excess would have been a mere matter of mathematics and the court should have instructed the jury that in any event the plaintiff would have been entitled to that amount within the statutory period of limitation, leaving only the issue of what, if anything, should be added as a penalty or for attorney's fee.

But, as we view the record, the issue was not that simple. The whole contention of the defendants was that they had enlarged and made substantial improvements in "Apartment 2" at considerable expense, which entitled them to an increase in rent, that they had notified the proper authorities, had fixed the rent as they had a legal right to do, and finally had registered it with the Rent Control Office, which had approved it as, in effect, a new and different housing unit. This position of defendants was emphasized by motions for an instructed verdict and by a request at the close of the general charge for a further charge that "The rental approved by the Area Rent Office is the valid rent for Apartment 2-A and dated back to the time the apartment was first rented and that no disapproval having been made by the Area Rent Office the amount of $15.00 was the correct rental for Apartment 2-A." The Court refused to so charge and that is assigned as error.

It is manifest that the remodeling of Apartment 2 and transformation of it into Apartment 2-A on the records of the Area Rent Office is the vital fact upon which the rights of the parties turn. It is equally manifest that the maximum rent fixed by the Housing Expediter for Apartment 2 is not controlling as the maximum for the remodeled and enlarged Apartment 2-A.

Now what is the law and procedure regulating the maximum charge for an apartment after it has been remodeled, enlarged to twice its original size?

It is clear that no authority has been conferred upon the Courts to fix a maximum rent. Indeed under the Constitution, no such authority could be conferred. It (fixing a maximum rent) is no more a judicial function than is the fixing a tax rate or a public utility rate. The authority over

such matters is conferred upon the other departments of government. Under the Rent Control Act Congress has delegated this power to the Housing Expediter, with appeal from his decision to an administrative board.

In Friedlander & Curreri on Rent Control at 193, speaking of the action of a tenant for treble damages because of a charge in excess of the maximum rent, based on reduced facilities, the authors said: "Such an action will not lie until the Federal rent control authorities have fixed a reduced maximum rent for the premises, since only such authorities have jurisdiction to prescribe decreased rents. The courts may not undertake to perform this function in place of the authorized administrative officials." Here the authors were applying a general fundamental principle to a specific situation.

The judicial action must be based upon prior administrative action, and to enforce such administrative ruling, except in such cases as the administrative action, accomplished or threatened, is so arbitrary and confiscatory as to constitute the taking of property without due process of law, in violation of the 5th Amendment of the United States Constitution.

It is clear that the rent collected by a prior owner for apartment 2 is not the maximum rent fixed by the Expediter for Apartment 2-A, created by enlargement and improvements of a capital nature. Whatever action that was taken by the Expediter's Office indicates his approval of a maximum rent of $15.00. If such action was a fixing of $15.00 as the maximum rent, then there was no overcharge. If the action falls short of fixing a maximum rent, then further action by the Rent Control Administration was necessary before the court would have jurisdiction to entertain an action by the tenant to recover the amount of any excessive charge.

No matter how this situation is viewed, the defendant, at least, had a right to have the Rent Control Office determine whether the improvements and modifications constituted a major capital improvement, justifying an increase in the maximum rent, and until such ruling no action could be maintained by the tenant in any court to recover an excess of payment.

In O. P. A. Rent Control Guide Book, at page 200:806, it is said in "Interpretation No. 9" headed "Determination of 'Major Capital Improvement'" that "Where housing accommodations have been substantially changed—by a major capital improvement—the maximum rent is the first rent after such change."—

"Under Section 5 (c) (1) the rent director may decrease this

maximum rent to the rent generally prevailing in the Defense Rental Area for comparable housing accommodations on maximum rent date."—

"Under the Regulations Orders in adjustment proceedings are not retroactive."

While subsequent legislation has made the order of the Housing Expediter reducing the rent is fixed by the landlord after the major capital improvement retroactive, we know of no legislation withdrawing from the landlord the right to fix the maximum rent of a new housing unit or a unit transformed by a major capital improvement, subject, however, to an obligation to refund in the event that it should be determined by the Rent Control Office that the rent so fixed was excessive.

As already noted, the Rent Control Office has not determined that $15.00 per week was an excessive rent. Indeed, the landlord proceeded to fix the maximum rent under instructions from the Rent Control Office, and that office has never questioned its validity. In this situation, it is our opinion that the plaintiff has no cause of action. If the plaintiff is entitled to any relief, it should be sought by action of the Rent Control Office, and not in the judicial courts.

For these reasons, the judgment is reversed, and the cause remanded, with instructions to dismiss the action.

HILDEBRANT, PJ, MATTHEWS & ROSS, JJ, concur in opinion & judgment.