WRIGHT, APPELLEE, *v.* YOUKILIS, APPELLANT.

(No. 7645—Decided December 8, 1952.)

*Mr. John C. McCarthy,* for appellee.
*Mr. John B. Freiden* and *Mr. Melvin J. Kessel,* for appellant.

*Per Curiam.* This is an action to recover an alleged rental charge exceeding the maximum fixed by the area rent office under the provisions of the United States Housing and Rent Control Act (61 Stats. at L., 199, Title 50, Section 1895 Appendix, U. S. Code). The Municipal Court of Cincinnati, in which this action was instituted, found that there had been an overcharge of $25 per month and awarded judgment based

on that finding for 11 months together with an attorney's fee of $150. It is from that judgment that this appeal is taken.

The plaintiff was a lessee of an apartment on the second floor of a building identified as 4610 Montgomery road at the time the defendant acquired title to the building. She and her daughter had occupied this second floor apartment for perhaps six or seven years, when her daughter married.

Shortly before the marriage of the plaintiff's daughter an apartment on the third floor became vacant, and negotiations were entered into between the plaintiff and defendant concerning the removal of the plaintiff and her daughter and son-in-law from the second floor apartment to this recently vacated apartment on the third floor. Who initiated these negotiations is in dispute. There is no doubt that before the plaintiff moved from the second floor apartment to the third floor apartment, the defendant made substantial repairs and changes in the third floor apartment, enlarging the living space and equipping it so that the daughter and her husband could have a bedroom and kitchen detached from the rest of the apartment, although they would be obliged to use the bathroom in common with the other occupants of the apartment. In making these alterations, the defendant expended about $900 and performed labor in person thereon. The defendant estimated that the value of the improvements was $1,500. Whether the improvements and alterations were such as to answer to the description of a "major capital improvement" within the meaning of the law entitling the defendant to an increase over the maximum rent fixed for the original apartment we do not stop to consider, as in our view we lack the power to decide that question.

In 1942, when this building was owned by Bexley Realty, Inc., the maximum rent for the third floor

apartment was fixed at $35 per month, and that was the rent being paid therefor when the defendant acquired title. There is no doubt that the plaintiff, with full knowledge of the dimensions and facilities of the apartment in its original condition and of the alterations being made, agreed to pay a rent of $60 per month. Whether these alterations were made specifically to accommodate her needs is in dispute, but there is no dispute that her obligation to pay rent was deferred until their completion, to wit, April 1, 1949.

The defendant did not petition for an adjustment of the rent of the apartment until February 12, 1952. In that petition, the defendant recited that the maximum rent for the apartment was $35 per month—the rent fixed for the apartment prior to the alterations. On March 17, 1952, the rent was fixed at $70 per month, effective February 12, 1952.

This action was commenced on April 28, 1952.

We see no substantial difference between the facts of this case and the facts of *Dunaway* v. *Torline*, 90 Ohio App., 516, 105 N. E. (2d), 75. We do not regard the finding and order fixing the maximum rent at $70 per month, effective February 12, 1952, as an adjudication that $70 per month would be an excessive rent for the period from April 1, 1949 to April 1, 1950. As the condition of the apartment was the same during that period, the implication would seem to be just the contrary. It appears in this case, as it did in that case, that the rent control office has not fixed a maximum rent for this remodeled apartment for the period before February 12, 1950. Nor has any governmental authority determined that the remodeling did not constitute a ''major capital improvement'' justifying a rental of $60 per month, fixed by the defendant in agreement with the plaintiff.

In the course of the opinion of this court in *Dunaway* v. *Torline, supra*, it is said at page 521:

"It is clear that no authority has been conferred upon the courts to fix a maximum rent. Indeed, under the Constitution, no such authority could be conferred. It (fixing a maximum rent) is no more a judicial function than is the fixing a tax rate or a public utility rate. The authority over such matters is conferred upon the other departments of government. Under the Rent Control Act Congress has delegated this power to the Housing Expediter, with right of appeal from his decision to an administrative board."

And, on page 522, we said:

"No matter how this situation is viewed, the defendant, at least, had a right to have the rent control office determine whether the improvements and modifications constituted a major capital improvement justifying an increase in the maximum rent, and until such ruling is made no action can be maintained by the tenant in any court to recover an excess of payment."

We are still of the opinion that those quotations correctly state the law and are applicable to this case.

The first paragraph of the syllabus to *Connor* v. *Wheeler*, 77 F. Supp., 875, is as follows:

"Where landlord fails to notify Area Rent Director that there has been a change in rental premises, landlord may continue to collect unapproved rental subject to a revision by public authority and to a refund of anything then found to have been excessive. Emergency Price Control Act of 1942, Section 1, *et seq.*, 2(b), 205(e), as amended, 50 U. S. C. A. Appendix, Section 901, *et seq.*, 902(b), 925(e)."

In the body of the opinion, at page 877, the court says:

"Where the landlord fails to notify the Area Rent Director that there has been a change in the rental premises, the landlord may continue to collect the unapproved rental but only on condition that it is sub-

ject to a revision by public authority and to a refund of anything then found to have been excessive.''

In an elaborate annotation to the case of *Graylyn Bainbridge Corp.* v. *Woods, Housing Expediter* (173 F. [2d], 790), 10 A. L. R. (2d), 242, it is said at page 306:

''A determination of the actual maximum rental to which the landlord is entitled is a necessary preliminary to a finding of overcharge, or the computation of the amount of damages. Since the statute vests in the Expediter the power to determine maximum rent figures, the courts have generally accepted the figure fixed by him and have, on occasion, refused to act in the absence of such an administrative determination.''

Many cases are cited and commented on following that statement.

We are of the opinion that there had been no administrative action fixing the maximum rental for this remodeled apartment, and that such action is a condition precedent to any action by a tenant to recover excessive payments.

For these reasons, the judgment is reversed, and the cause is remanded with instructions to dismiss the action.

*Judgment reversed.*

HILDEBRANT, P. J., and MATTHEWS, J., concur.