DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Marcella Gaydosh, appeals the judgment of the Summit County Court of Common Pleas, which granted summary judgment in favor of appellees, Jeffrey Cole and Katherine Procop.[1] This Court affirms.
 I. {¶ 2} On July 15, 2005, appellant filed a defamation complaint against appellees.[2] Appellee Cole filed an answer and counterclaim alleging abuse of process. Appellant filed a motion to dismiss appellee Cole's counterclaim pursuant to Civ.R. 12(B)(6) and requested sanctions pursuant to Civ.R. 11. Appellee Cole responded in opposition. On November 16, 2005, the trial court granted appellant's motion and dismissed appellee Cole's counterclaim. The trial court impliedly denied appellant's request for sanctions, when it declined to rule on the request.
 {¶ 3} Appellee Procop answered the complaint, asserting in part that her speech is protected as an expression of opinion.
 {¶ 4} Appellant filed a motion for partial summary judgment on the issue of appellees' liability, exclusive of damages. Appellees filed separate motions for summary judgment. All parties responded in opposition and filed their respective replies. The trial court denied appellant's motion for partial summary judgment and granted appellees' respective motions for summary judgment, thereby dismissing appellant's complaint. The trial court premised its ruling on its finding that appellees' statements constituted protected opinions. Appellant timely appeals, setting forth three assignments of error for review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT TO PROCOP AND COLE, AND DENIED SUMMARY JUDGMENT TO GAYDOSH, AFTER RULING THAT PROCOP'S AND COLE'S STATEMENTS ABOUT GAYDOSH WERE ALLEGEDLY STATEMENTS OF OPINION PROTECTED BY THE OHIO CONSTITUTION."
 {¶ 5} Appellant argues that the trial court erred by denying her motion for summary judgment and granting appellees' motions for summary judgment upon finding that appellees' statements constituted opinions protected by the Ohio Constitution. This Court disagrees.
 {¶ 6} This Court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the nonmoving party. Viock v. Stowe-WoodwardCo. (1983), 13 Ohio App.3d 7, 12.
 {¶ 7} Pursuant to Civ.R. 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated;
 (2) the moving party is entitled to judgment as a matter of law; and
 (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 8} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresher v.Burt (1996), 75 Ohio St.3d 280, 293. Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the nonmoving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. State ex rel. Zimmerman v. Tompkins (1996), 75 Ohio St.3d 447,449.
 {¶ 9} To prevail on her claim alleging defamation, appellant must prove (1) a false and defamatory statement; (2) about appellant; (3) published without privilege to a third party; (4) with fault of negligence by appellees; (5) that was either defamatory per se or caused special harm to appellant. Rosenbaum v. The Chronicle Telegram, 9th Dist. Nos. 01CA007896 and 01CA007908, 2002-Ohio-7319, at ¶ 24, citingAkron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Serv., Inc. (1992),81 Ohio App.3d 591, 601.
 {¶ 10} Section 11, Article I of the Ohio Constitution provides in relevant part: "Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press."
 {¶ 11} This Court previously set out the law relevant to an analysis of the issue:
 "A statement is not defamatory if it is a statement of opinion, because expressions of opinion are generally protected under Section 11, Article I of the Ohio Constitution. Vail v. Plain Dealer Publishing Co. (1995), 72 Ohio St.3d 279, 280; DeVito v. Gollinger (1999), 133 Ohio App.3d 51, 54. '[T]he determination of whether allegedly defamatory language is opinion or fact is a question of law to be decided by the court.' Vail, 72 Ohio St.3d at 280, citing Scott v. News-Herald (1986), 25 Ohio St.3d 243, 250. See, also, Wampler v. Higgins (2001), 93 Ohio St.3d 111, 126.
 "In resolving whether an allegedly defamatory statement is protected opinion, a court must consider the totality of the circumstances. Vail, 72 Ohio St.3d at syllabus. 'Consideration of the totality of [the] circumstances * * * involves at least four factors. First is the specific language used, second is whether the statement is verifiable, third is the general context of the statement and fourth is the broader context in which the statement appeared.' Scott, 25 Ohio St.3d at 250. 'This analysis is not a bright-line test[.]' Vail, 72 Ohio St.3d at 282. '[T]he totality of the circumstances test * * * can only be used as a compass to show general direction and not a map to set rigid boundaries.' Id., quoting Scott, 25 Ohio St.3d at 250. See, also, Ollman v. Evans (D.D.C.1984), 750 F.2d 970, 979-984.
 "The weight given to any one factor under this inquiry will vary depending on the circumstances of each case. Vail, 72 Ohio St.3d at 282. 'While necessarily imperfect, these factors * * * assist in discerning as systematically as possible what constitutes an assertion of fact and what is, in contrast, an expression of opinion.' Ollman, 750 F.2d at 979." Rosenbaum at ¶ ¶ 37-39.
 {¶ 12} The Ohio Supreme Court has stated that "when themeaning of an allegedly defamatory statement is in question, courts apply an objective 'ordinary reader' test to determine whether an allegedly libelous statement is a false statement of fact." (Emphasis in original.) Wampler, 93 Ohio St.3d at 122. Furthermore, the Ohio Supreme Court has recognized the "innocent construction rule," which states that "if allegedly defamatory words are susceptible to two meanings, one defamatory and one innocent, the defamatory meaning should be rejected, and the innocent meaning adopted." Yeager v. Local Union 20, Teamsters,Chauffeurs, Warehousemen Helpers of America (1983), 6 Ohio St.3d 369,372.
 {¶ 13} Appellant alleged that appellees defamed her during the following discussion on May 5, 2005, on the "Mayor's Report," which aired on cable Channel Nine:
 "MR. COLE: I know something else you hate is getting sued over and over by the same individual in the city, and it's to the point, and I'm not — I don't even know what it is this time, because it seems every time there's a suit, generally the Court's been in favor of the City, and I don't know how many times you can do that before — I guess the word is frivolous?
 "MAYOR PROCOP: Well, I feel they're frivolous. The last lawsuit that we had, don't forget she won on appeal.
 "MR. COLE: Right.
 "MAYOR PROCOP: So, and that's generally the case. And this one, here again, is over annexations. But now she has cited several properties that were annexed during the 1990s. One of those properties happens to be our industrial base, Summit Commerce Parkway, and, um, my understanding is that there were two suggestions, that perhaps we return that property back over to the Township or return the collected taxes on that property.
 "Well, if you would like to see the demise of the City of Twinsburg because we have to pay back the taxes for over a decade or turn this — our industrial base back into the Township, just stay with us, because I just think this lawsuit is unconscionable.
 "Those annexations were definitely legal, they went through the proper channels, they were approved by the City, they were approved by the County, and, um, I would just hate to see any negative ramifications simply because somebody continues to take these issues to Court.
 "MR. COLE: And I notice — and I don't want to spend any time with your Law Director, because we've discussed it before, and there's a lot of people that aren't, you know, in favor of him in the position and whether he gets a raise and all those other things, but I guess my point is, it seems like he's got to spend an inordinate amount of time every time this suit comes along.
 "Does he have to spend a lot of time on this —
 "MAYOR PROCOP: Well —
 "MR. COLE: I mean, it seems like it's something always on the back burner that he's got to deal with where he could be doing something else, I guess.
 "MAYOR PROCOP: Right. Um, actually, this one, we are also going to use Clair Dickenson [sic] that we used before.
 "MR. COLE: Oh, okay.
 "MAYOR PROCOP: We just won our — if you recall —
 "MR. COLE: Yes.
 "MAYOR PROCOP: — we just won our last lawsuit against Ms. Gaydosh, and we will be using Clair Dickenson [sic] again because Charles Webster may have to be a Witness in this one.
 "MR. COLE: Okay.
 "MAYOR PROCOP: So, obviously he can't defend the City. "MR. COLE: But, you got to —
 "MAYOR PROCOP: So we are racking up additional legal fees.
 "MR. COLE: Yeah, but you've got to feel it's time and effort that could be spent elsewhere —
 "MAYOR PROCOP: Oh, absolutely.
 "MR. COLE: — when you still have this going on. "MAYOR PROCOP: Absolutely.
 "MR. COLE: Okay.
 "MAYOR PROCOP: This has gotten to the point that it can't be taken lightly. These — these are serious issues we have out there."
 {¶ 14} In reviewing the specific language used, it is clear that appellee Cole was soliciting a response from appellee Procop, rather than making affirmative assertions of fact. Appellee Cole was clear that he was not aware of the details of the pending lawsuit when he sought appellee Procop's input. Appellee Cole premised his queries on speculation rather than firm assertions of fact. He further inquired regarding appellee Procop's "feelings." Under these circumstances, this Court finds that appellee Cole's specific language would not be construed by an ordinary person as anything other than inquiries for the opinion of his guest.
 {¶ 15} Appellee Procop indicated that she "felt" that appellant's lawsuits were frivolous. Moreover, during her deposition, she defined the word "frivolous" within the context of her comment as "an annoyance." Appellee Procop was clear that appellant had recently prevailed in a case before the appellate court, so there was no implication that appellant's lawsuits were without merit from a purely legal standpoint. This Court finds that the ordinary person would interpret such language as appellee Procop's subjective expression of frustration regarding the lawsuits. In addition, her statement that appellant's pending lawsuit is "unconscionable" is used in a "loosely definable" or "variously interpretable" sense, which cannot support an action for defamation. See, Wampler, 93 Ohio St.3d at 128, citingOllman, 750 F.2d at 980. This Court agrees that the ordinary listener is "considerably less likely to infer facts from an indefinite or ambiguous statement than one with a commonly understood meaning." Ollman,750 F.2d at 979.
 {¶ 16} Appellant argued below that the negative implications of appellee Procop's statements are sufficient to establish actionability. This Court agrees with the Wampler court which stated that where the language used is inherently imprecise and subject to myriad subjective interpretations, a mere pejorative tone is not sufficient to sustain a cause of action for defamation. Wampler, 93 Ohio St.3d at 128. We find that appellee Procop's language was imprecise and constituted a personal frustration with the situation, where the City was compelled to defend a series of lawsuits.
 {¶ 17} In reviewing the verifiability of appellees' statements, this Court again finds that appellee Cole did not make any assertions subject to verification, as he merely posed questions premised on speculation to appellee Procop. Whether appellant prevailed on some, all or none of her previous lawsuits against the City is a different matter from whether it "seemed" to appellee Cole that the courts tended to rule in the City's favor.
 {¶ 18} This Court further finds that appellee Procop's statements regarding the frivolous and unconscionable nature of the lawsuits are not amenable to verification. Rather, they serve to express her subjective frustration with a situation. Again, appellee Procop was clear that appellant had prevailed on her last case before the appellate court. Her statements that certain of appellant's lawsuits were frivolous or unconscionable did not implicate any legal definitions of those words. In fact, appellant admitted during her deposition that she was not aware of the legal definitions of those words. Under the circumstances, this Court finds that appellee Procop's statements are "standardless statements not amenable to objective proof or disproof." See Vail, 72 Ohio St.3d at 283.
 {¶ 19} The general context of the statements arises out of the airing of a segment of the "Mayor's Report" on Channel Nine. While appellee Cole testified at his deposition that the show was meant to educate and inform the viewers, he further asserted that there is little preparation or coordination between himself and his guest. The show is designed to touch upon numerous points of interest to the viewers in a short period of time. The discussion of appellant's pending and prior lawsuits constituted one of many snippets of conversation during the show. In addition, a "report" may convey not only substantiated facts, but also the reporter's impressions. The informal question and answer format on the "Mayor's Report," especially where appellee Cole solicits his guest's thoughts and feelings on various topics, puts the listener on notice that appellee Procop might "'ventilate' [her] personal frustrations and opinions" concerning appellant's various lawsuits. See,Wampler, 93 Ohio St.3d at 130.
 {¶ 20} Finally, the broader context in which the statements were made was a forum designed to inform the viewers on matters of public concern. However, this Court again notes the informal question and answer format with little prior preparation and quick segues from one topic to another. Appellee Cole sought the views of appellee Procop as the mayor of Twinsburg. Although the mayor is an elected official, there is no assertion that her personal views mirror those of every citizen in the City. The ordinary person would understand the "Mayor's Report" as a forum in which appellee Procop would identify factual situations regarding the City, as well as express her subjective views and emotions regarding those situations. Such a forum serves to facilitate public debate and awareness of issues relevant to the citizenry.
 {¶ 21} Under a totality of the circumstances analysis, this Court finds that appellees' statements during the May 5, 2005 "Mayor's Report" constituted protected opinion as a matter of law, so that appellant's complaint alleging defamation was not actionable. Accordingly, the trial court did not err by denying appellant's motion for partial summary judgment, granting appellees' respective motions for summary judgment, and dismissing appellant's complaint. Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT TO PROCOP AND COLE, AND DENIED SUMMARY JUDGMENT TO GAYDOSH, AFTER RULING THAT GAYDOSH DID NOT PROVE SHE HAD SUFFERED PECUNIARY LOSSES AS A RESULT OF PROCOP'S AND COLE'S STATEMENTS ABOUT HER."
 ASSIGNMENT OF ERROR III "THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT TO PROCOP AND COLE, AND DENIED SUMMARY JUDGMENT TO GAYDOSH, AFTER SUMMARILY RULING THAT GAYDOSH HAD NOT MET HER BURDEN AS TO ANY OF THE OTHER ELEMENTS OF LIBEL."
 {¶ 22} Appellant argues that the trial court erred by granting appellees' motions for summary judgment and denying appellant's motion for partial summary judgment after finding that appellant failed to prove any other elements of her defamation claims and that she suffered any pecuniary loss. Because this Court's decision regarding appellant's first assignment of error is dispositive, we decline to address appellant's second and third assignments of error as they are rendered moot. See App.R. 12(A)(1)(c).
 III. {¶ 23} Appellant's first assignment of error is overruled. This Court declines to address appellant's second and third assignments of error. The judgment of the Summit County Court of Common Pleas, which granted summary judgment in favor of appellees on appellant's complaint, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
SLABY, P. J. WHITMORE, J. CONCUR
[1] Ms. Procop is the mayor of the City of Twinsburg, and the alleged defamatory statements were made during the May 5, 2002 airing of the "Mayor's Report" on Channel Nine. Appellant repeatedly asserted that she was not suing Ms. Procop within her capacity as the mayor. Rather, appellant asserted that she was suing Ms. Procop in her individual capacity.
[2] Appellant also named Adelphia Cable Communications, Time Warner Cabel, Inc. and Western Reserve Cable Television Consortium as defendants, but she voluntarily dismissed the three entities on August 4, 2005.